UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>  v.<br><br>JEFFERSON COUNTY, et al.,<br><br>            Defendants. | Civil Action No. CV-75-S-666-S |
| JOHN W. MARTIN, et al.,<br><br>            Plaintiffs,<br><br>  v.<br><br>CITY OF BIRMINGHAM, et al.,<br><br>            Defendants. | Civil Action No. CV-74-S-17-S |
| ENSLEY BRANCH OF THE N.A.A.C.P.,<br>et al.,<br><br>            Plaintiffs,<br><br>  v.<br><br>GEORGE SEIBELS, et al.,<br><br>            Defendants. | Civil Action No. CV-74-S-12-S |

**MARTIN/BRYANT PARTIES' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL RELIEF FROM ORDER**

The Martin plaintiffs and the Bryant intervenors ("the Martin/Bryant Parties") oppose the motion filed on February 13, 2013, by Jefferson County (the "County") to modify this Court's Order of February 12, 2013, which was the product of

careful and lengthy negotiations between the parties and to which all parties agreed and sent a stipulated form of order to the Court.

## Statement of Facts

On December 12, 2012, at the conclusion of the bench trial on the motion of the Martin/Bryant Parties to hold the defendant Jefferson County in contempt, the Court instructed the parties to consult with the Special Master and the Personnel Board to identify those positions that will most likely require hiring decisions and to draft an interim plan for hiring and promotional decisions. In addition, the County consented to the Court's issuance of an oral order that the County refrain from making any hiring or promotion decisions until the Court entered an interim order, either one to which all parties agreed or, failing agreement, one determined by the Court. In either case, the interim order was intended to prescribe a set of processes for making hiring and selection decisions for jobs the County may need to fill before the Court renders its final judgment on the Martin/Bryant Parties' motion for contempt. (Tr. Vol. IX, 89:9-90:6; see also Doc. 1771.)

The next day, December 13, 2012, the County sought permission to hire 14 individuals who had been offered employment with the County prior to the conclusion of the bench trial. Upon stipulation by the parties, the Court agreed that under the circumstances the County could proceed with those hires. (See Doc. 1778 at 2.)

On January 18, 2013, the County notified the parties of its desire to hire 14 additional individuals in six job classifications, including eight Clinical Nurse Practitioners for the County's urgent care facility. The County proposed a method of selection for hiring the Clinical Nurse Practitioners, a Medical Transcriber, and two Principal Buyers, and requested the ability to contact the Personnel Board of Jefferson County to develop a

2

register of eligibles for the remaining three job classifications.  (See Exhibit A at 1-3, Doc. 1769-1.)

On January 22, 2013, the Martin/Bryant Parties notified the County that it did not object to the County's proposal to hire the Clinical Nurse Practitioners, Medical Transcriber, or Principal Buyers.  The Martin/Bryant Parties agreed that the County should request registers of eligibles for the other three job classifications and emphasized that the County should also do so for any positions for which the County anticipates hiring and there is no active register.  (See Exhibit A at 4, Doc. 1769-1.)

On January 24, 2013, the County requested the Court's permission to proceed with those hires and its requests to obtain registers of eligibles.  (Doc. 1769.)  On January 28, 2013, the Court granted the County's motion to make those limited hires, provided that the method was agreed upon by the parties and the Special Master.  (Doc. 1771.)

The Martin/Bryant Parties undertook the task of preparing a first draft of the Proposed Temporary Order (which would provide a mechanism for determining the specifics to be included in the interim order), and on January 2, 2013, they circulated it to the United States for comment, and thereafter, on January 9, 2013, to the County and the Special Master.  (See Doc. 1778.)  Thereafter, the County sent proposed changes on January 22, 2013; the Martin/Bryant parties sent a response on February 1, 2013; and the County sent a further response on February 6, 2013.  In the Joint Status Report filed February 1, 2013, the parties acknowledged the many communications, and characterized their efforts as working "continuously" to draft an interim proposal.  (See id.)  All of these drafts and comments were circulated not just to the County's outside counsel, but to Mr.

Lawson at the County Attorney's office as well.  During the entire course of the negotiations, the County never once suggested, or even intimated, that the provisions of the Proposed Temporary Order might be unworkable for the Cooper Green clinic or urgent care facility.

On February 8, 2013, Ms. Fritzler, on behalf of the Martin/Bryant Parties and the United States, circulated to the County, including to Mr. Lawson, the final draft of the Proposed Temporary Order.  (Wilson Decl. Ex. A, E-mail from R. Fritzler to G. Murphy, Feb. 8, 2013.)  Ms. Murphy responded that there were "several people at the County that need to review and approve this language, so it will likely be Monday before we have approval for filing".  (Wilson, Decl. Ex. B, E-mail from G. Murphy to R. Fritzler, Feb. 8, 2013.)

On February 11, 2013, Ms. Murphy informed the plaintiffs that the County approved the Proposed Temporary Order.  (Wilson, Decl. Ex. C, E-mail from G. Murphy to R. Fritzler and J. Adelstein, Feb. 11, 2013.)  Ms. Murphy did not mention anything in relation to the Cooper Green clinic or urgent care facility.  The Martin/Bryant Parties filed the Proposed Temporary Order that same day, advising the Court that all parties had agreed to it. (Doc. 1779; Doc. 1780.)

On February 13, 2013, this Court entered the Temporary Order, in the form stipulated to by the parties, setting out a process for the development of interim methods for hiring and promotion in jobs for which the County anticipated a crucial need over the next six months.  However, later that same day, without notifying the plaintiffs, the County moved to modify the freshly-minted Order by excluding the Cooper Green clinic and urgent care facility.  (Doc. 1781.)

**Argument**

The Martin/Bryant Parties have no desire whatsoever to jeopardize the health of citizens who may need to depend on the services to be provided by the Cooper Green clinic and the urgent care facility. However, this Court should deny the County's motion for several reasons, and instead order the County to supplement the list of jobs it previously provided to include any within the Cooper Green clinic and urgent care facility as to which it anticipates a crucial need to hire or promote within the next six months, and require the Personnel Board to provide the relevant information relating to certification lists, selection procedures, registers of eligibles and layoff lists that it has provided (or is in the process of providing) for the positions already identified by the County.[1]

First, the County's behavior is simply astonishing. We cannot even begin to imagine a defensible explanation for spending two months to arrive at a stipulated form of order, carefully and repeatedly vetted by all parties, and then moving to amend it the very same day it is entered.

Second, the County never informed the Martin/Bryant Parties that the processes set forth in the Proposed Temporary Order would be unworkable for the Cooper

---

[1] The purpose of the Temporary Order is to identify each job as to which the County can anticipate a crucial hiring need within the next six months, and provide basic information to the parties for each such position, identifying: (a) the nature of the Board's selection device (e.g., MQ screen only, written exam, T&E evaluation of paper record, structured interview); (b) the composition and rank ordering of the layoff list, if any; (c) the composition of the existing register, if any, and its remaining lifespan; and (d) the hypothetical composition of certification lists assuming a single hire/promotion or the total number of hires/promotions anticipated by the County for each such position. That information would then enable the parties to negotiate a proposed interim order specifying an interim selection method for each particular job classification. For some, use of the layoff list might be most appropriate. For others (e.g., Truck Driver, where the County's own expert has found adverse impact to a statistical certainty), use of the layoff list would be inappropriate, but use of a certification list might be acceptable. We note that, for several positions as to which the County believes it will have a crucial hiring need over the next several months, the Board has no active register and no selection procedure in place. As to those, it would behoove the County to request the creation of a register immediately.

Green clinic or the urgent care facility.  Although the County now states that "[a]t the time that the Jefferson County Commission voted to close inpatient care at Cooper Green Mercy Hospital in August, 2012, it was never contemplated that there would be a mandated hiring freeze with regard to Cooper Green", the County certainly was aware as of December 12, 2012, that there was a mandated hiring freeze with regard to all County hiring–to which the County stipulated.    (Doc. 1781 at 3.)

Third, the Temporary Order already contains a procedure by which the County may request essential recall, hiring or promotional needs other than those already identified by the County.  (Doc. 1780 ¶¶ 9-10.)  The Martin/Bryant Parties and the United States must respond to unanticipated essential requests for merit-system positions within seven business days of receiving information from the Personnel Board for those positions. (Id.)  When, even before the entry of the Temporary Order, the County indicated a necessity to hire eight Clinical Nurse Practitioners for the urgent care facility on an emergency basis, the Martin/Bryant Parties and the United States notified the County that they did not object to the County's proposal only three business days later.  (See Exhibit A at 4, Doc. 1769-1.)  The County has not advanced any reasonable explanation why the urgent care facility and clinic cannot hire within those parameters.  Instead, the County relies on generalizations—"numerous and consistent challenges", "staffing challenges", "unforeseen staffing issues"—and lists of legal requirements by which Cooper Green has always had to comply. (Doc. 1781 at 2, 3.)

Fourth, the County's request to the Martin/Bryant Parties and United States concerning the hiring of eight Clinical Nurse Practitioners demonstrates that the County knew that the December 12 oral Order barred that hiring absent an order from the Court

(which the County obtained).  The County had no reason to assume that the hiring and promotional freeze contained in the Proposed Temporary Order did not apply to the Cooper Green clinic or the urgent care facility.

<u>Fifth</u>, the County's assertion that Cooper Green Mercy Hospital was excluded from the Consent Decree is incorrect.  The Decree's general injunctive provisions, including but not limited to those in Paragraphs 1, 3, 5, 31, and 33, apply to the County in its entirety, not only to those positions, divisions, and departments listed in paragraphs 7 and 8 or Appendices A and B.  In fact, Paragraph 26 of the Decree specifically relates to Cooper Green Hospital: "The County shall discontinue the use of the Personnel Board's current promotional potential rating system in the following departments in which such ratings have been demonstrated to have had an adverse impact on blacks: Cooper Green Hospital, General Services."

It is true that the Martin/Bryant Parties chose not to present evidence that the County's past hiring and promotional decisions as to positions within Cooper Green violated the Consent Decree.  (Of course, proof as to other violations of the decree, such as those contained in paragraphs 31 and 33, applies County-wide: for example, the Decree's reporting requirements, semiannual evaluation requirements, reviews of supervisory personnel and provision of an affirmative action officer were intended to benefit all employees, including those at Cooper Green.)  Nonetheless, the ability to hire and promote in what appears to be a nondiscriminatory manner in the past does not exempt or exclude the Cooper Green clinic and urgent care facility from scrutiny under the Consent Decree in future hiring and promotional decisions, which is precisely what is at issue with regard to the Temporary Order and interim order.

7

Finally, if the County has a genuine concern that the existing procedures in the Court's February 13, 2013, Order will jeopardize the health of citizens of Jefferson County because of the time the Personnel Board may take to compile the necessary information required by that Order, the solution is not to exempt the Cooper Green clinic and urgent care facility from the Temporary Order (or the forthcoming interim order). Instead, within the framework of the existing Order, the County could now request the Personnel Board to compile the necessary information ahead of time, so that it could be delivered to the parties as soon as the County desired to hire or promote someone on an emergency basis within one of those facilities. Alternatively, despite the fact that the County should have raised this at some point during the past two months, the Martin/Bryant Parties would be willing to modify the February 13 Order so that (i) the County must immediately list any positions within the Cooper Green clinic or urgent care facility for which it expects to have a crucial hiring need within the next six months; and (ii) the Board must provide the requisite information to the parties, so that everyone can have as much of a head start as possible in creating mechanisms to be included in the interim order that will streamline that process to the extent possible. Essentially, those positions should have been identified by the County along with the 58 it has identified; despite our incredulity at the County's conduct, the County's poor should not sacrifice their health to pay for the County's attorneys' missteps.

**<u>Conclusion</u>**

For the reasons set forth above, the Martin/Bryant Parties respectfully request that the County's motion to exclude the Cooper Green clinic and urgent care facility from hiring restrictions imposed by the Court be denied.

Dated:  February 15, 2013

             Respectfully submitted,

             <u>/s/ Rowan D. Wilson</u>
             Rowan D. Wilson
             Thomas G. Rafferty
             Rachel M. Fritzler
             Lauren M. Rosenberg

             CRAVATH, SWAINE & MOORE LLP
             Worldwide Plaza
              825 Eighth Avenue
               New York, NY 10019
                (212) 474-1000

             *Attorneys for Plaintiffs John W. Martin, et al. and Intervenors Gwendolyn Bryant, et al.*

CERTIFICATE OF SERVICE

I hereby certify that, on the 15th day of February, 2013, I electronically filed the foregoing "Martin/Bryant Parties' Opposition to Defendant's Motion for Partial Relief from Order" using the CM/ECF system, which will send notification of such filing to the following counsel of record and the Special Master.

Jay D. Adelstein, Esq.
Joseph Sperber, IV, Esq.
   Employment Litigation Section, Attn: 4500 PHB
      Civil Rights Division
         United States Department of Justice
           950 Pennsylvania Avenue, N.W.
              Washington, D.C. 20530

T.A. Lawson, II, Esq.
Edwin A. Strickland, Esq.
   Assistant County Attorney
      280 Jefferson County Courthouse
         716 Richard Arrington Jr. Blvd. North
           Birmingham, AL 35203

Dr. John G. Veres, III
   Office of the Chancellor
      Auburn University at Montgomery
         P.O. Box 244023
           Montgomery, AL 36124-4023

Edward A. Hosp, Esq.
Janell M. Ahnert, Esq.
Grace R. Murphy, Esq.
Thomas Butler, Esq.
Stephanie H. Mays, Esq.
   Maynard, Cooper, and Gale, P.C.
      1901 Sixth Avenue North
         2400 Regions/Harbert Plaza
           Birmingham, AL 35203

James E. Murrill, Jr., Esq.
Robert R. Riley, Jr., Esq.
Keith Jackson, Esq.
Kallie C. Lunsford, Esq.
   Riley & Jackson, P.C.
      1744 Oxmoor Road
         Birmingham, AL 35209

2

Leslie A. Coyne, Esq.
Aaron L. Dettling, Esq.
   Balch & Bingham, LLP
      1901 Sixth Avenue North, Suite 1500
         Birmingham, AL 35203

Byron R. Perkins, Esq.
   Perkins Law
      2170 Highland Ave. South, Suite 100
         Birmingham, AL 35253

                            /s/ Rowan D. Wilson
                            Rowan D. Wilson

                            CRAVATH, SWAINE & MOORE LLP
                            Worldwide Plaza
                            825 Eighth Avenue
                            New York, NY 10019
                            Phone:  (212) 474-1000
                            Fax:  (212) 474-3700
                            E-mail:  rwilson@cravath.com