UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>JEFFERSON COUNTY, et al.,<br><br>                                    Defendants. | Civil Action No. CV-75-S-666-S |
| JOHN W. MARTIN, et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CITY OF BIRMINGHAM, et al.,<br><br>                                    Defendants. | Civil Action No. CV-74-S-17-S |
| ENSLEY BRANCH OF THE N.A.A.C.P., et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>GEORGE SEIBELS, et al.,<br><br>                                    Defendants. | Civil Action No. CV-74-S-12-S |

**MARTIN/BRYANT PARTIES' OPPOSITION TO DEFENDANT'S MOTION FOR EMERGENCY APPOINTMENT**

The Martin plaintiffs and the Bryant intervenors ("the Martin/Bryant parties") oppose the motion filed on February 19, 2013, by Jefferson County (the "County") to appoint Ms. Vines as a Licensed Professional Counselor ("LPC") at Cooper Green clinic.

**Statement of Facts**[1]

According to the County, for about forty years, Jefferson County has employed Licensed Professional Counselors ("LPCs") via contract when, in fact, the position of LPC should have been part of the classified service, and employed through the merit system. (Wilson Decl. Ex. A, E-mail from T. Lawson to R. Wilson, Feb. 18, 2013.) On August 28, 2012, the Jefferson County Commission voted to close Cooper Green Hospital but, apparently, decided to retain some medical services through entities called Cooper Green clinic and urgent care. (Defs.' Mot. for Partial Relief from Order at 2, Feb. 13, 2013, Doc. 1781.) The County contracted with psychiatrists to provide services to Cooper Green (as contract workers, not merit system employees), and those same contracts provided for LPCs to work at Cooper Green, again as contract workers, not merit system employees. Those contracts, or at least some of them, ended on January 31, 2013. (Wilson Decl. Ex. A at 1; see also Defs.' Mot. for Emergency Appointment at 2, Feb. 19, 2013, Doc 1786.) Presumably, the County was aware of the termination of those contracts; had intended to continue to provide some level of psychiatric and counseling services via Cooper Green clinic and/or urgent care after shuttering the hospital; and had taken some steps to provide for psychiatric services to continue once the contract(s) expired.

On December 11, 2012, at the conclusion of the trial, and at the direction of the Court, the County undertook to provide a list of all positions as to which, during an interim period of about six months, the County anticipated a need to hire or promote employees. On December 13, 2012, the County provided the parties with a list of 99 job

---

[1] The Martin/Bryant parties have attempted to cobble together the facts as best we can from the limited information provided to us by the County; however, the County has not answered certain questions we have asked, and some of the statements of facts included herein are based on our inferences from the information provided by the County.

classifications, totaling 229 vacancies, as to which the County anticipated a need to hire or promote within the next six months. (Joint Status Report at 2, Feb. 1, 2013, Doc. 1778.) After the Martin/Bryant parties, United States and Personnel Board expressed surprise at the magnitude of those numbers, the County, on January 7, 2013, provided a revised list of 58 job classifications totaling 112 expected vacancies. (Id. at 3.) Neither the County's original list nor its revised list made any mention of LPC vacancies. At the time, the Martin/Bryant parties were unaware that the County planned to continue any portion of the services previously provided by Cooper Green.

On January 18, 2013, the County notified the parties that it had an urgent need to fill 14 positions. (Mot. for Order, Jan. 24, 2013, Doc. 1769.) The County sought the Court's approval to make those hires; although the Court initially called for responses from the parties, it subsequently rescinded that Order and granted the County permission. (Order, Jan. 28, 2013, Doc. 1771.)

On February 13, 2013, the County, without notice to the parties, moved this Court to determine that Cooper Green clinic and urgent care were not subject to the Consent Decree, and, therefore, deem them excluded from the hiring freeze to which the County had stipulated pending the Court's interim order. That motion did not mention the need to hire an LPC. (See Defs.' Mot. for Partial Relief from Order, Doc. 1781.) The Martin/Bryant parties opposed that motion, and the Court denied it on February 19, 2013. (Order, Feb. 19, 2013, Doc. 1785.)

A few hours after the Martin/Bryant parties filed their opposition to the County's motion to exclude Cooper Green, counsel for the County sent an e-mail to the parties stating:

3

> Due to unforeseen circumstances, the County must hire a licensed professional counselor (LPC) immediately.  In transitioning from operating Cooper Green Mercy Hospital to Cooper Green Mercy Health Services, the County has been renegotiating contracts of services previously performed by physicians through Jefferson P.C. (the private physician group that was previously providing services to Cooper Green patients). At the time we provided the positions the County anticipated hiring in the next 6 months (now reflected on Exhibit A to the Temporary Order), we were not aware of the substance of these physician contracts or their expiration dates.
>
> The current critical need concerns psychiatric care for patients at Cooper Green. The County is negotiating a contract for a psychiatrist. The contract is contingent on Cooper Green providing the psychiatrist with a LPC. The current contract expired on January 31, 2013 and we were just alerted to this today. The LPC that was previously serving in this role (until 1/31/13) is named Katie Vines. Her mental health patients have been without her services for fifteen days now so it is imperative that the County fill this position immediately. Thus, the County hereby requests that it be allowed to fill this position with Ms. Vines through the Personnel Board's emergency appointment procedure pursuant to Personnel Board Rule 11.3(e).
>
> (Wilson Decl. Ex. B, E-mail from G. Murphy to counsel, Feb. 15, 2013.)

The County did not indicate that the position had been erroneously treated as a non-merit position for nearly forty years, nor did it inform the parties that the Personnel Board (therefore) had no job analysis, job description, selection procedure or register in place for that position.  The County, inconsistently, noted that "we" (presumably the attorneys) did not know of the LPC contracts when providing the list of anticipated hires now incorporated into the Court's Temporary Order, even though the County "has been renegotiating" Cooper Green contracts as part of the transition from the hospital to the clinic and urgent care facilities, suggesting that the County, if not its outside counsel, has known about this problem for some time, perhaps as long as several months.

        Although the County suggested a telephone call three days later to discuss the issue, the Martin/Bryant parties responded that same day by asking for additional information concerning the County's employment of Ms. Vines and past employment of

other LPCs. (Id.; Wilson Decl. Ex. C, E-mail from R. Wilson to counsel, Feb. 15, 2013.) Mr. Lawson responded on February 18, 2013, answering some, but not all, of the Martin/Bryant parties' questions. (See Wilson Decl. Ex. A at 1.) Specifically, Mr. Lawson failed to state whether there were other LPCs whom the County terminated, and if so, why the County proposed to re-hire Ms. Vines. Mr. Lawson's February 18 e-mail also revealed, for the first time, that for nearly forty years the County had erroneously hired LPCs through non-merit processes, when, in fact, the LPC positions should have been filled as classified positions through the merit system.

At 4:47 PM (CST) on February 19, 2013, the County advised the parties later that same day that it would move the Court for leave to hire Ms. Vines. (Wilson Decl. Ex. D, E-mail from H. Cockrell to counsel, Feb. 19, 2013.) The United States immediately wrote back, reminding the County that it had not answered certain of the Martin/Bryant parties' questions. (Wilson Decl. Ex. E, E-mail from J. Adelstein to counsel, Feb. 19, 2013.) The United States also asked the County for some additional information. Mr. Lawson responded to the United States at 7:21 PM, but still did not answer the question of whether Cooper Green had previously had LPCs other than Ms. Vines; if so, who were those people and why Ms. Vines was preferred over them. (Wilson Decl. Ex. F, E-mail from T. Lawson to counsel, Feb. 19, 2013.) Then, at 9:01 PM, the County filed the instant motion to appoint Ms. Vines to the LPC position and again provided no information as to whether LPCs other than Ms. Vines had worked at Cooper Green and, if so, why Ms. Vines was being selected. (Defs.' Mot. for Emergency Appointment, Doc 1786.)

**Argument**

The Martin/Bryant parties do not wish to jeopardize the psychiatric care provided by the Cooper Green clinic and/or urgent care facility, but even outside the state of Denmark, something is rotten.

First, the Court's Temporary Order – which the County heavily negotiated before stipulating to it – contains specific procedures for unanticipated emergency hiring needs.  (Temporary Order, Feb. 13, 2013, Doc. 1780.)  The County's motion violates that Order.  The County first communicated to the parties the need to hire an LPC on Friday, February 15.  (See Wilson Decl. Ex. B.)  The Temporary Order specifies that the Martin/Bryant parties and the United States must respond to unanticipated essential requests for merit-system positions within seven (7) business days of receiving information from the Personnel Board for those positions, and that the County may move for relief ten (10) business days after the Personnel Board provides that information.  (Temporary Order ¶¶ 9-10, Doc. 1780.)  Despite those provisions, the County prematurely moved for relief without permitting the Martin/Bryant parties and the United States to even obtain sufficient information from the County, let alone the Board.  For independent reasons explained below, information from the Board may be crucial to the outcome of this motion, even apart from the County's procedural violation.

Second, the County's motion proposes an "emergency appointment" of Ms. Vines to the position of LPC, but the County appears to be utterly confused about how it might now go about hiring Ms. Vines, and likely cannot now do so, even if the Temporary Order's injunction did not exist.  Mr. Lawson advised the Martin/Bryant parties that the County sought to make a "temporary appointment" of Ms. Vines pursuant to Personnel Board Rule 11.3(d).  (Wilson Decl. Ex. A at 1.)  Two days later, when the United States

6

specifically pointed out that the Board rules limited "emergency appointments" to 30 days and had to meet the requirements determined by the Board, (Wilson Decl. Ex. G, E-mail from J. Adelstein to T. Lawson, Feb. 20, 2013), Mr. Lawson merely stated: "In the event the Board could not develop a list within 30 days, I'm sure they would extend the appointment or convert it to temporary under (d) until they could develop a list." (Wilson Decl. Ex. H, E-mail from T. Lawson to J. Adelstein, Feb. 20, 2013.) The County's motion, however, seeks permission to appoint Ms. Vines as a 30-day "emergency appointment", pursuant to Personnel Board Rule 11.3(e), even though it is apparent that the Board could not possibly conduct a job analysis, establish minimum qualifications, post the job, develop and administer a selection procedure, and generate a certification list within 30 days; indeed, even 6 months might be difficult for a position as to which the Board has no prior frame of reference. (Defs.' Mot. for Emergency Appointment at 3, Doc 1786.) In either case, however, the Personnel Board Rules and Regulations do not permit the County's intended course of action, quite apart from the Court's Temporary Order.

Rule 11.3 governs appointments to the classified service. (Wilson Decl. Ex. I, Rules & Regulations of the Personnel Board of Jefferson County at 33, Nov. 13, 2012.) Rule 11.3(e) allows for an emergency appointment "not to exceed thirty (30) days . . . . Candidates for emergency appointments shall meet the requirements recommended by the Director and approved by the Board." (Id. at 34.) Rule 11.3(d) allows for a temporary appointment for "extenuating circumstances not to exceed six (6) months in duration. Candidates for temporary appointments shall meet the requirements recommended by the Director and approved by the Board." (Id.) Both of these provisions require that the

7

candidate meet specific requirements recommended by the Director and approved by the Board.

The fundamental problem is that, because the County has evaded the merit system for forty years, the job classification of LPC does not currently exist at the Personnel Board. The current Personnel Board website listing of all classified positions does not list any merit system job classification with the title "Licensed Professional Counselor."[2] The problem is not merely that there is presently no register of eligibles; there is no evidence that the Personnel Board has ever performed a job analysis, established minimum qualifications, or developed and administered a selection procedure.

Third, the purported urgency in appointing an LPC is contradicted by the County's behavior. The County stated in its motion that "patients have currently had the services delayed for approximately 15 days now" and that "[i]t is imperative that we fill this position immediately", but County attorneys failed to bring this matter to the attention of the plaintiffs and the Special Master until the evening of Friday, February 15, 2013, more than two weeks after the contract with Jefferson, P.C. expired. (Defs.' Mot. for Emergency Appointment at 3, Doc 1786.) Apart from the fact that the County should be charged with knowing the terms of its contracts, and should especially have been aware of them given its decision to shut down Cooper Green Hospital while intending to provide some services through Cooper Green clinic and/or urgent care, the County admits that it

---

[2] But for the County's violation of the Court's Temporary Order, the Martin/Bryant parties would have used their 7-day period to ask the Personnel Board how quickly it could create such a classification, whether the County had already asked it to do so, and what processes it might use in doing so. The Martin/Bryant parties still intend to contact the Personnel Board in that regard, but have been distracted by the County's February 13 motion, its instant motion and its motion of this morning, all of which were filed during the time when the Martin/Bryant parties' responses to the County's proposed findings of fact and conclusions of law are being finalized.

has been attempting to renegotiate these contracts for some time now. In all likelihood, the County's decision to wait until February 15 to raise this issue was a tactical one, made in the hope that the motion to exclude Cooper Green would be unopposed, and the County would never have to bring to light the 40-year circumvention of the merit system rules (which it did not do even on February 15).

Fourth, a close reading of the County's submissions gives the impression that the relief being sought here is a perpetuation of the system of cronyism detailed in excruciating detail at the contempt trial. According to the County's motion, it is not the January 31 expiration of the contract that has occasioned the need to hire Ms. Vines; instead, it is "the transition from operating Cooper Green Mercy Hospital to Cooper Green Health Services [that has] . . . required [the County] to renegotiate the contracts of several services". (Id. at 2.) The motion further admits that for "weeks" of renegotiating the contract with the psychiatrist, the negotiations "appeared to be . . . successful", the "current psychiatrist at Cooper Green Hospital" – who is not a merit employee – has refused to enter into a new contract. (Id.) Ms. Vines previously "worked with the psychiatrist with whom the County is in negotiation." (Id.) The "successful negotiation" of a new contract with the psychiatrist who previously worked at Cooper Green Hospital "is contingent upon the employment of a Licensed professional Counselor." (Id. at 2-3.) In simpler words, the psychiatrist is demanding that Ms. Vines be hired as LPC; otherwise, he will not sign a contract. Whatever Ms. Vines' qualities – as to which we express no view – this is not the way employment decisions should be made, even emergency or temporary ones; it appears to be more of the same pattern of providing employment opportunities to those whom you know, without any objective standards in place for fair decision-making. The County's

9

motion to re-hire Ms. Vines is particularly striking in contrast to its counsel's statement that: "Vines should never have been a part of the [Jefferson, P.C.] contract in the first place. Her position should have been filled with a merit system employee." (Wilson Decl. Ex. H at 1.)

Finally, the evidence at trial demonstrated that the Cooper Green staff is – or was – largely African American. (See Taylor, Tr. Vol. VII, 7:12-10:13, Dec. 7, 2012.) The County now proposes to re-hire Ms. Vines, who is white, into the LPC position without disclosing any information about who else may be qualified for that position or who else has previously served in that position. (See Wilson Decl. Ex. A at 1.) The County's creation of this emergency by its own neglect; the County's filing of the motion in violation of the Court's Order and without regard to the Personnel Board rules that would prevent this hire until at least minimum qualifications were developed; and the County's refusal to provide further information about the individuals who also may have served as LPCs at Cooper Green but now are jobless, are further demonstrations of the County's unwillingness and/or inability to come into compliance with the Consent Decree without the appointment of a receiver.

However, once again we find ourselves having to choose between holding the County to the terms of this Court's Orders and avoiding injury to innocent, underprivileged members of the community, who surely could benefit from the continued provision of counseling services. We therefore respectfully suggest that the Court deny the County's motion, but instead order the following: (1) the County must immediately identify all persons who served as LPCs (or equivalent) at Cooper Green Hospital at any point in 2011-12, including their race, gender, contact information and, to the extent

available, resume, qualifications and work history; (2) if Cooper Green, in that period, employed LPCs other than Ms. Vines, the Martin/Bryant parties and United States (or, if the Court prefers, Dr. Veres, the Special Master) shall be given 5 days to attempt to contact those persons to determine whether they have any interest in the position; (3) if some others are interested, the position shall be filled on a temporary basis, not to exceed six months, by lottery among them (including Ms. Vines); (4) if no others are interested, or if there were no other LPCs at Cooper Green during the 2011-12 period, then the County shall be authorized to employ Ms. Vines on a temporary basis not to exceed six months; (5) when the Board develops a selection procedure, any experience gained during temporary employment shall not be taken into account by the Board's procedure; and (6) when the County receives a certification list for this particular vacancy, it shall select from among the certified applicants by lottery.

Dated:  February 21, 2013

                                                Respectfully submitted,

                                        /s/ Rowan D. Wilson
                                        Rowan D. Wilson
                                        Thomas G. Rafferty
                                        Rachel M. Fritzler
                                        Lauren M. Rosenberg

                                        CRAVATH, SWAINE & MOORE LLP
                                        Worldwide Plaza
                                            825 Eighth Avenue
                                               New York, NY 10019
                                                   (212) 474-1000

                                        *Attorneys for Plaintiffs John W. Martin, et al. and Intervenors Gwendolyn Bryant, et al.*

CERTIFICATE OF SERVICE

I hereby certify that, on the 21st day of February, 2013, I electronically filed the foregoing "Martin/Bryant Parties' Opposition to Defendant's Motion for Emergency Appointment" using the CM/ECF system, which will send notification of such filing to the following counsel of record and the Special Master.

Jay D. Adelstein, Esq.
Joseph Sperber, IV, Esq.
   Employment Litigation Section, Attn: 4500 PHB
      Civil Rights Division
         United States Department of Justice
            950 Pennsylvania Avenue, N.W.
               Washington, D.C. 20530

T.A. Lawson, II, Esq.
Edwin A. Strickland, Esq.
   Assistant County Attorney
      280 Jefferson County Courthouse
         716 Richard Arrington Jr. Blvd. North
            Birmingham, AL 35203

Dr. John G. Veres, III
   Office of the Chancellor
      Auburn University at Montgomery
         P.O. Box 244023
            Montgomery, AL 36124-4023

Edward A. Hosp, Esq.
Janell M. Ahnert, Esq.
Grace R. Murphy, Esq.
Thomas Butler, Esq.
Stephanie H. Mays, Esq.
   Maynard, Cooper, and Gale, P.C.
      1901 Sixth Avenue North
         2400 Regions/Harbert Plaza
            Birmingham, AL 35203

James E. Murrill, Jr., Esq.
Robert R. Riley, Jr., Esq.
Keith Jackson, Esq.
Kallie C. Lunsford, Esq.
   Riley & Jackson, P.C.
      1744 Oxmoor Road
         Birmingham, AL 35209

Leslie A. Coyne, Esq.
Aaron L. Dettling, Esq.
   Balch & Bingham, LLP
      1901 Sixth Avenue North, Suite 1500
         Birmingham, AL 35203

Byron R. Perkins, Esq.
   Perkins Law
      2170 Highland Ave. South, Suite 100
         Birmingham, AL 35253


                /s/ Rowan D. Wilson
                Rowan D. Wilson

                CRAVATH, SWAINE & MOORE LLP
                Worldwide Plaza
                825 Eighth Avenue
                New York, NY 10019
                Phone: (212) 474-1000
                Fax: (212) 474-3700
                E-mail: rwilson@cravath.com