UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. CV-75-S-666-S |
| v. | |
| JEFFERSON COUNTY, *et al.*, | |
| Defendants. | |
| JOHN W. MARTIN, *et al.*, | |
| Plaintiffs, | Civil Action No. CV-74-S-17-S |
| v. | |
| CITY OF BIRMINGHAM, *et al.*, | |
| Defendants. | |
| ENSLEY BRANCH OF THE N.A.A.C.P., *et al.*, | |
| Plaintiffs, | Civil Action No. CV-74-S-12-S |
| v. | |
| GEORGE SEIBELS, *et al.*, | |
| Defendants. | |

**RESPONSE OF THE MARTIN/BRYANT PARTIES TO THE MOTION OF
JEFFERSON COUNTY FOR RECONSIDERATION OF THE
FEBRUARY 19, 2013, ORDER**

The Martin plaintiffs and the Bryant intervenors ("the Martin/Bryant Parties")

oppose the motion filed on February 21, 2013, by Jefferson County (the "County") to reconsider

this Court's Order of February 19, 2013, for which there is neither a legal basis nor a reasoned

justification for revisiting.

I.      JEFFERSON COUNTY HAS NOT MET THE STANDARD FOR
        RECONSIDERATION.

A motion to alter or amend a judgment is governed by Federal Rule of Civil

Procedure 59(e), although the County does not make even a fleeting reference to that rule.  Rule

59(e) does not specify the grounds on which a motion to reconsider may be granted, but federal

courts have developed a common law standard to permit reconsideration only in cases of "newly-

discovered evidence or manifest errors of law or fact."  Arthur v. King, 500 F.3d 1335, 1343

(11th Cir. 2007) (holding that the district court did not abuse its discretion in denying appellant's

motion to alter or amend judgment under 59(e) because the evidence in question was not newly

discovered evidence).  A motion for reconsideration should not simply relitigate an issue already

decided by the court, raise argument or present evidence that could have been raised prior to the

entry of judgment.  Id.; see also Linet v. Vill. Wellington, 408 F.3d 757, 763 (11th Cir. 2005)

(holding that the district court correctly denied appellant's motion to amend or alter —

essentially a motion to reconsider the district court's prior summary judgment order — because a

party "cannot use a 59(e) motion to relitigate old matters, raise argument or present evidence that

could have been raised prior to the entry of judgment").

"[W]here a party attempts to introduce previously unsubmitted evidence on a

motion to reconsider, the court should not grant the motion absent some showing that the

evidence was not available during the pendency of the motion".  Mays v. United States Postal

Serv., 122 F.3d 43, 46 (11th Cir. 1997) (holding that the district court correctly denied motion

for reconsideration under 59(e) because no showing was made that the appellant's new evidence

could not have been presented previously).  Even more clearly, where a party merely rehashes

arguments that it already made, "the rules simply do not permit [it] to take a 'mulligan'".

2

<u>Bashir's Inc. v. Sharif,</u> No. 2:09-CV-536-RDP, 2012 WL 3637582, at *2 (N.D. Ala. Aug. 22, 2012) (denying the motion for reconsideration because the "moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling").

   The County has not presented any newly-discovered evidence nor has it suggested that this Court made any error of law or fact.  Instead, the County continues to rely on the same type of generalizations as its February 13 motion − "cannot be anticipated", "unanticipated" and "emergency" – in the hopes that the Court will reconsider if it now inserts them in bold font. (<u>See</u> Mot. for Reconsideration at 3, 4, 6, Feb. 21, 2013, Doc. 1788.)  Nothing in the County's instant motion, however, provides any grounds on which the issue may be reconsidered.  The County still has not provided any reasonable explanation why the urgent care facility cannot hire within the parameters of the Temporary Order.  (Temporary Order, ¶¶ 9-10, Feb. 13, 2013, Doc. 1780.)

II.  THIS COURT SHOULD DENY JEFFERSON COUNTY'S MOTION FOR RECONSIDERATION ON THE MERITS.

   Although the County makes no reference to the standard for reconsideration, it implicitly offers two justifications for its motion: (1) "the Martin Bryant parties . . . inferred that Defendant was disingenuous when the parties' proposed temporary order was submitted to the Court", (Mot. for Reconsideration at 2, Doc. 1788); and (2) "supplement[ing] the list of jobs to be covered by the Court's temporary order . . . is impossible".  (<u>Id.</u> at 3.)  The County has grossly misunderstood both the inferences the Martin/Bryant parties' intended the Court to draw, and the terms of the Temporary Order.

A.      The Martin/Bryant Parties' Response Did Not Seek to Suggest that the County
        had Acted Disingenuously.

In setting out the chronology of events pertaining to the negotiation and joint

submission of the Temporary Order, the Martin/Bryant parties emphasized the following:

- On December 12, 2012, the County stipulated to a hiring freeze, but the next day asked to proceed with 14 in-process hires, to which the parties promptly agreed after receiving certain information.  (Opp. to Defs.' Mot. for Partial Relief from Order at 2, Feb. 15, 2013, Doc. 1783.)

- The Martin/Bryant parties circulated a draft of the Proposed Temporary Order to the County on January 9, 2013.  (Id. at 3.)

- While the parties were negotiating the language of the Temporary Order, the County, on January 18, 2013, advised the parties that it wanted to hire another 14 persons, including eight Clinical Nurse Practitioners for the Cooper Green urgent care facility, but also needed to fill positions in the Family Court, Coroner's office, and Purchasing Department.  (Id. at 2-3.)

- The County sent a proposed revised draft of the Temporary Order back to the Martin/Bryant parties and the United States on January 22, 2013.  (Id. at 3.)

- The Martin/Bryant parties sent the County a further revised draft on February 1, 2013.  (Id.)

- The County sent a further response on February 6, 2013.  (Id.)

- The Martin/Bryant parties sent what they believed to be a final draft as to which all parties agreed, on February 8, 2013.  (Id. at 4.)

- Upon receipt of the final draft, the County advised the parties that "several people at the County . . . need to review and approve this language".  (Id.)

- On February 11, 2013, the County advised the parties that the County desired one more change to the Proposed Temporary Order, and with that change authorized the Martin/Bryant parties to file the proposed order with the Court.  (Id.)

- On February 13, 2013, this Court entered the Temporary Order as agreed to by the parties.  (Id.)

- Later that same day, the County moved to exclude the Cooper Green clinic and urgent care facility from the Temporary Order.  (Id.)

4

In that Response, the Martin/Bryant parties were not suggesting that the County had deliberately misled the parties, Special Master or Court.  The essential points we tried to make were twofold: (1) the County should be bound to the terms of the Order it vetted, approved and submitted to the Court; (2) the County has again demonstrated that it is not competent to manage its own personnel processes.

To avoid any further confusion on the County's part about the message we intended to deliver, we elaborate it here.  The County Commission voted in August 2012 to close Cooper Green Hospital.  Mr. Lawson's letter of January 18, 2013, begins: "As you are all aware, Jefferson County as of December 31 ceased the operation of Cooper Green Mercy Hospital in favor of an Urgent Care facility."  (See Wilson Decl. Ex. A, Feb. 21, 2013, Doc. 1791.)  Counsel for the Martin/Bryant parties, who do not reside in or near Jefferson County, were not aware of that fact.  However, the County surely must have been aware of its own plan long before December 31; should have realized that, if the urgent care facility was to have a staff, that staff would have to come from somewhere, and should have – well before agreeing to a hiring freeze at the end of the contempt trial, and well before agreeing to the Proposed Temporary Order – thought about how it would staff that facility in the face of the hiring freeze and Temporary Order.  Indeed, the County's request to hire -- on an emergency basis – eight Clinical Nurse Practitioners for the Cooper Green urgent care facility came four days before the County first responded to the Martin/Bryant parties' initial draft of the Proposed Temporary Order, and nearly a month before the County finally authorized that proposed order to be filed with the Court.  It is sheer incompetence, and a problem of the County's own making, if it agreed to an

Order that it cannot live with, because the facts were entirely within the County's knowledge and control.  We did not mean to suggest disingenuousness, only institutional incompetence.[1]

        B.      <u>The County has Misunderstood the Terms of the Temporary Order.</u>

The County complains that compliance with the Court's Order of February 19, 2013, issued in conjunction with the denial of the County's motion to modify the Temporary Order, is "impossible" to comply with "because situations, such as the Licensed Professional Counselor issue . . . **cannot be anticipated**."  (Mot. for Reconsideration at 2, Doc. 1788 (emphasis in original).)  There are two problems with the County's argument.

<u>First</u>, the LPC example is a poor one for the County to have chosen.  As mentioned above, the County surely knew well before December 31, 2012, when it shut down Cooper Green Hospital, that it would need one or more LPCs at the Cooper Green clinic and/or urgent care facility.  The County's motion concerning the LPC position admits that the County has been in negotiations for "weeks", suggesting that the issue could have been raised then, instead of now.  Raising it sooner would have behooved the County not merely in terms of obtaining the agreement of the parties or relief from the Court, but because the LPC position should be in the classified service, raising the issue earlier would have given the Personnel Board more time to determine how to handle the problem under its own Rules.  To say that the need to have an LPC in the Cooper Green clinic or urgent care facility "cannot be anticipated" simply

---

[1] To avoid any future confusion, we do note that the Martin/Bryant parties' response to the County's motion to hire a Licensed Professional Counselor on an emergency basis does suggest disingenuousness on the part of the County, inasmuch as the County first moved to exclude Cooper Green from the Temporary Order, without mentioning the need to hire a Licensed Professional Counselor, much less that the County had improperly excluded the position from the merit system for nearly 40 years, and revealed those facts only after learning that the Martin/Bryant parties had objected to the County's motion to exclude Cooper Green.

cannot be true; perhaps the County or its attorneys failed to realize that need when they should have, but failing to do so and the impossibility of doing so are very different propositions.

Second, the Temporary Order, as modified by this Court's Order of February 19, 2013, does not put the County in a "no-win position". The Temporary Order contemplates two types of situations. Paragraphs 2-8 cover the procedures to be used for positions as to which the County presently can anticipate a need to hire or promote within the next six months. The job classifications listed in Appendix A constitute the set of those job classifications. However, the parties (including the County) recognized that during the next six months or so, "essential recall, hiring or promotional needs other than those identified by the County" may arise. (Temporary Order, ¶ 9, Doc. 1780.) In those circumstances, the Temporary Order contains a different process. The Court's Order of February 19, 2013, does not require the County to anticipate hiring needs that it cannot anticipate. That Order says:

> Jefferson County must provide to the Martin-Bryant parties, on or before March 1, 2013, a supplemental list of jobs to be covered by the temporary order, including any jobs within the Cooper Green clinic and urgent care facility as to which the County anticipates a crucial need to hire or promote within the next six months.

(Order at 1-2, Feb. 19, 2013, Doc. 1785.)

If there are no additional positions, whether at Cooper Green clinic or urgent care facility or elsewhere, that the County now anticipates it may need to fill within the next six months, then it need only say so and provide no additional list to the Martin/Bryant parties. That outcome seems unlikely, because the County's own moving papers suggest that there are several types of merit positions at the surviving Cooper Green facilities that the County has discovered – or could with modest effort discover – that need to be filled if patients are to be served. (See Mot. for Reconsideration at 3-4, Doc. 1788.) But whatever the answer, whether no positions or many, the

Court's February 19 Order requires the County to anticipate what it can, with reasonable effort, anticipate, and not what it cannot.

Moreover, despite negotiating, vetting and agreeing to it, the County does not appear to understand the Temporary Order at all. The County claims that although Personnel Board Rule 11.3 covers emergency appointments, the Temporary Order has "no such mechanism"; that it "would not be appropriate for such a mechanism to be in the Court's Order dealing with anticipated hires because . . . these are in fact **unanticipated** and **emergency** hires". (See Mot. for Reconsideration at 5-6, Doc. 1788.) However, paragraph 9 of the Temporary Order is specifically designed to cover unanticipated hires; unanticipated, emergency situations are its sole purpose.

Based on its erroneous conclusion that the Temporary Order has no mechanism for unanticipated hires, the County then asks the Court to undo the Temporary Order: first, by allowing the County to hire pursuant to Personnel Board Rule 11.3(e) with notice only, eliminating the time periods for obtaining information, reviewing information, and lodging objections, if any, as provided in the Temporary Order; and second, by turning over to a Special Master (apparently, "a" Special Master, not "the" Special Master)[2] all approval or disapproval of hires for the Cooper Green facilities, without notice to, provision of information to, or right of objection by the parties – again stripping out the bargained-for terms of the Temporary Order.

---

[2] We should note that, during the negotiations concerning the Proposed Temporary Order, the County desired all disputed hiring or promotional decision to be submitted to Dr. Veres for decision, and the Martin/Bryant parties insisted that any disputes be resolved by the Court. The County ultimately agreed to the Martin/Bryant parties' demand, which is reflected in the Temporary Order. The County's motion for reconsideration now seeks to undo what it specifically agreed to – not just with regard to resolution of disputes by the Court, but also as to the provision of information to the parties and the right of the parties to lodge objections before even emergency hires are made.

The County does not appear to understand that the Temporary Order and the Personnel Board Rules must both be satisfied if the County is to make an emergency or temporary appointment to a merit position. Even if, for example, the parties agree that a certain emergency hire may occur (as we have previously done[3]), the County must independently satisfy the Personnel Board Rules to be able to make that appointment. The County's requests are nothing more than an attempt to expunge the Martin/Bryant parties' and United States' bargained-for protections contained in the Temporary Order, without any justification in the slightest.

III.     THE COUNTY'S RECENT FOIBLES FUTHER DEMONSTRATE THE NEED FOR APPOINTMENT OF A RECEIVER.

The principal thrust of the County's response to the motion for contempt is that it is under new management, which has the best of intentions. Leaving aside the observation of St. Bernard of Clairvaux, there are two points worth noting with regard to the County's behavior since the close of trial.

First, the County does not have the resources or ability to manage its own employment decisions. It produced two wildly different estimates of the numbers of persons and positions it is likely to need to fill in the next six months, both of which are inconsistent with its

---

[3] The Martin/Bryant parties and the United States have in all cases responded expeditiously to requests by the County to make unanticipated hires. When the County, at 7:15 PM (EST) on Friday, February 15, first advised the parties of the LPC matter, the County suggested having a call on February 18 to discuss the issue. A little more than an hour later, counsel for the Martin/Bryant parties, hoping to expedite the disposition of the issue more quickly than the County had proposed, replied by asking three questions – one of which (were there any LPC's other than Ms. Vines at Cooper Green Hospital and, if so, why was she preferred over the others) – remains unanswered to this date. (See Opp. to Defs.' Mot. for Emergency Appointment at 4-5, Feb. 21, 2013, Doc. 1790.) Despite the fact that the County clearly should have raised this issue much earlier, and itself created the emergency, the Martin/Bryant parties have always attempted to respond to such requests as quickly as possible, and have repeatedly assured the County of that intention.

pretrial position that it would likely be conducting very little hiring over the next few years.  The

County appears to have planned to transition Cooper Green Hospital to a smaller operation back

in August, without making any plans for transitioning personnel, and claims to be surprised by

its own contracts.  It discovered, after 40 years, that it has improperly been filling merit positions

with contract employees, bypassing the Board and merit system.  Instead of disclosing that fact,

it made an attempt to exclude the Cooper Green facilities from the Consent Decree and

Temporary Order.  It negotiated and consented to a Temporary Order that it now appears not to

understand whatsoever, and is attempting to eviscerate in a way that would deny the parties

information and the right to oversee what the County does, thus depriving the Court of any

informed opposing view.  Simply put, the County has been making an additional record that it is

not, at present, capable of managing its own employment decisions.

       Second, the County's preferred remedy – leaving employment decision-making in

its hands subject to some sort of oversight by a Monitor, will proliferate the disputes that must be

resolved by the Court.  The County's recent spate of motions, including this one, has been

composed of self-inflicted wounds. A modest knowledge of its own business would have

obviated the "emergencies".  Advance communications with the Martin/Bryant parties and

United States could have produced reasonable results without the need for motions and

responses.  With the County still at the helm, the next several years promise to be much like the

last few weeks.

       A Receiver, on the other hand, empowered as Dr. Sims was, will from the start

make better decisions, thus reducing the burden on the Court, the Martin/Bryant parties and the

United States.  Perhaps the recent episodes demonstrate that the Receiver's first step must be to

revamp the Human Resources Department, so that the County is not caught by surprise about the

termination dates of its own contracts, or about its own circumvention of the merit system, or merely so that the County proactively communicates with the Board so that it does not wind up in the present situation, where 23 of the 53 job classifications for which it intends to hire in the next six months have no active register, and one of those positions is not even a job classification recognized by the Board.  However one looks at it, the County's post-trial conduct does not inspire the least bit of confidence that the best way to resolve this endless litigation is to leave matters in the County's hands.

### Conclusion

For the reasons set forth above, the Martin/Bryant Parties respectfully request that the County's motion to reconsider the Court's February 19 Order be denied.

Dated:  February 21, 2013

Respectfully submitted,

/s/ Rowan D. Wilson
Rowan D. Wilson
Thomas G. Rafferty
Rachel M. Fritzler
Lauren M. Rosenberg

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         (212) 474-1000

*Attorneys for Plaintiffs John W. Martin, et al. and Intervenors Gwendolyn Bryant, et al.*

CERTIFICATE OF SERVICE

I hereby certify that, on the 21st day of February, 2013, I electronically filed the foregoing "Response of the Martin/Bryant Parties to the Motion of Jefferson County for Reconsideration of the February 19, 2013, Order" using the CM/ECF system, which will send notification of such filing to the following counsel of record and the Special Master.


Jay D. Adelstein, Esq.
Joseph Sperber, IV, Esq.
    Employment Litigation Section, Attn: 4500 PHB
        Civil Rights Division
            United States Department of Justice
                950 Pennsylvania Avenue, N.W.
                    Washington, D.C. 20530

T.A. Lawson, II, Esq.
Edwin A. Strickland, Esq.
    Assistant County Attorney
        280 Jefferson County Courthouse
            716 Richard Arrington Jr. Blvd. North
                Birmingham, AL 35203

Dr. John G. Veres, III
    Office of the Chancellor
        Auburn University at Montgomery
            P.O. Box 244023
                Montgomery, AL 36124-4023

Edward A. Hosp, Esq.
Janell M. Ahnert, Esq.
Grace R. Murphy, Esq.
Thomas Butler, Esq.
Stephanie H. Mays, Esq.
    Maynard, Cooper, and Gale, P.C.
        1901 Sixth Avenue North
            2400 Regions/Harbert Plaza
                Birmingham, AL 35203

James E. Murrill, Jr., Esq.
Robert R. Riley, Jr., Esq.
Keith Jackson, Esq.
Kallie C. Lunsford, Esq.
    Riley & Jackson, P.C.
        1744 Oxmoor Road
            Birmingham, AL 35209

12

Leslie A. Coyne, Esq.
Aaron L. Dettling, Esq.
    Balch & Bingham, LLP
        1901 Sixth Avenue North, Suite 1500
           Birmingham, AL 35203

Byron R. Perkins, Esq.
    Perkins Law
        2170 Highland Ave. South, Suite 100
           Birmingham, AL 35253

                    /s/ Rowan D. Wilson
                    Rowan D. Wilson

                    CRAVATH, SWAINE & MOORE LLP
                    Worldwide Plaza
                    825 Eighth Avenue
                    New York, NY 10019
                    Phone:  (212) 474-1000
                    Fax:  (212) 474-3700
                    E-mail:  rwilson@cravath.com